O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| HELADIO DIAZ, | Case No. EDCV 12-00363-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Heladio Diaz seeks judicial review of the Commissioner's final decision denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. For the reasons discussed below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

**I.  Background**

Plaintiff was born on February 18, 1959. (Administrative Record ("AR") at 52.) He speaks limited English and has relevant work experience as a small engine mechanic and as a truck driver. (AR at 47.) Plaintiff filed his applications for DIB and SSI on September 4, 2008,

alleging disability beginning July 5, 2008, due to pulmonary tuberculosis, diabetes, and seizures. (AR at 16, 198.)

Plaintiff's applications were denied initially on September 26, 2008, and upon reconsideration on December 18, 2008. (AR at 16.) An administrative hearing was held on November 19, 2010, before Administrative Law Judge ("ALJ") Maxine R. Benmour. Plaintiff, represented by counsel, testified with the assistance of a Spanish interpreter. A Vocational Expert ("VE") also testified. (AR at 16.)

On January 10, 2011, the ALJ issued an unfavorable decision. (AR at 22-28.) At the first step of the five-step sequential evaluation process for determining whether an individual is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the disability onset date. (AR at 18.) At step two, the ALJ found that though the Plaintiff suffers from a seizure disorder, diabetes, diabetic neuropathy, pulmonary tuberculosis, and neck pain, these impairments are not severe, either individually or in combination. (AR at 18-19.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. On January 23, 2012, the Appeals Council denied review. (AR at 1-3.)

Plaintiff commenced this action for judicial review, and on September 18, 2012, the parties filed a Joint Stipulation ("Joint Stip.") of disputed facts and issues. Plaintiff contends that the ALJ erred in finding that his medical impairments were not severe by failing to properly consider both the relevant medical evidence and plaintiff's subjective complaints. (Joint Stip. at 3.) Plaintiff seeks remand for a new administrative hearing. (Joint Stip. at 23-24.) The Commissioner requests that the ALJ's decision be affirmed. (Joint Stip. at 24.)
//

**II. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

**A. The ALJ's Finding that Plaintiff Suffers from No Severe Impairment is not Supported by Substantial Evidence**

Plaintiff contends that the ALJ's conclusion that his impairments are non-severe is not supported by substantial evidence. (AR at 4.) In particular, Plaintiff maintains that his diabetes is a severe impairment in and of itself. (AR at 6.) The Court agrees that the ALJ erred in

finding that Plaintiff's diabetes and diabetic neuropathy are non-severe, and therefore remand is appropriate.[1]

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). An impairment is not severe *only* if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28[2]; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). An ALJ's conclusion at step two that the claimant lacks a medically severe impairment should be affirmed only where it is "'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687

---

[1] Because the finding that Plaintiff's diabetes constitutes a severe impairment warrants remand, Plaintiff's contentions regarding his other impairments will not be discussed.

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy.... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991).

(quoting S.S.R. 85-28) (reversing a step two determination "because there was not substantial evidence to show that Webb's claim was 'groundless'").

Here, Plaintiff has offered sufficient evidence to demonstrate that his diabetes and diabetic neuropathy have more than a minimal effect on his ability to perform work-related functions. First, Plaintiff has provided one year of medical records documenting that during monthly visits, his glucose levels were extremely high and that his diabetes was "uncontrolled." (AR at 375, 376, 383, 387, 389, 388, 391, 392, 395, 399, 400.) Additionally, a radiology report dated November 7, 2008, notes that Plaintiff had complained of numbness in both feet, and that x-rays revealed arterial calcification in his left foot, indicating diabetes and diabetic neuropathy. (AR at 378-80.) A progress note dated January 14, 2009, states that Plaintiff was referred to an ophthalmologist for a retinal hemorrhage, which can be caused by uncontrolled diabetes. (AR at 386); *see also* Mayo Clinic, http://www.mayoclinic.com/health/diabetic-retinopathy/DS00447. On September 25, 2008, a state agency reviewing physician completed a residual functional capacity assessment indicating that Plaintiff suffered from exertional limitations with respect to his ability to lift and/or carry, and to stand, walk, and sit. (AR at 334.)

While the ALJ provided several reasons for finding that Plaintiff's diabetes did not constitute a severe impairment, these reasons are not sported by substantial evidence. *Webb*, 433 F.3d at 687. First, the ALJ found that Plaintiff was not compliant with his doctor's recommendations regarding exercise and diet, as there were at least two notations in the medical record that Plaintiff was not cooperating with these recommendations. (AR at 21, 389, 399.) A claimant who refuses to follow

prescribed treatment without good reason will be denied benefits. 20 C.F.R. § 404.1530; § 416.930. However, there must be evidence that compliance with the treatment would restore the claimant's ability to work. 20 C.F.R. §§ 404.1530(a); *Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995).

Here, there is no evidence that compliance with his physician's recommendations related to diet and exercise would have fully remedied his diabetes-related symptoms. To support a finding that Plaintiff could keep his diabetes under control by following recommendations, the ALJ appears to have relied on a July 2008 consultation stating that Plaintiff was taking his medications and that his blood sugar was controlled. (AR at 20.) However, the July 2008 consultation makes no mention of Plaintiff's diet or exercise habits, (AR at 293), and the medical records documenting his high glucose levels between November 2008 and October 2009 also state that Plaintiff was taking his medication as directed and was regularly refilling his prescription. (AR at 384, 386, 389, 391, 397, 399, 400, 404.) These records show that Plaintiff was experiencing complications despite taking his medications, and contain no evidence that compliance with his doctor's exercise and diet directions would fully restore his ability to work.

Next, the ALJ found that Plaintiff's neuropathy was not severe because his extremities have appeared normal during all appointments, aside from a radiology report dated November 7, 2008, finding calcification in Plaintiff's left foot (AR at 21.) However, the ALJ's reliance on these findings is inconsistent with his determination that Plaintiff does suffer from diabetic neuropathy. To the extent the ALJ was convinced that Plaintiff's extremities were, in fact, normal, he should not have concluded that he suffers from neuropathy. Furthermore,

the findings noting that Plaintiff's extremities were normal were part of a long check-the-box list without explanation as to what type of test was administered or whether it was one likely to document symptoms related to diabetic neuropathy. (*See, e.g.,* AR at 371.) In light of the evidence documenting Plaintiff's consistently high blood sugar levels,[3] the x-ray showing calcification in Plaintiff's foot, and Plaintiff's testimony regarding his symptoms, discussed more fully below, the notations that Plaintiff's extremities were normal do not constitute substantial evidence to support the ALJ's finding that Plaintiff's diabetic neuropathy was not severe.

Third, the ALJ noted that the medical record suggests that Plaintiff did not receive treatment for his diabetes in the year prior to the hearing, as it appears that there were no records submitted for that time period related to diabetes. (AR at 21.) However, both diabetes and diabetic neuropathy are not curable medical conditions. The year's worth of records covering the period between November 2008 and November 2009 document consistently high blood sugar levels and other signs that Plaintiff's diabetes was out of control. There is no indication that Plaintiff's symptoms were improving over time or that they ended after this time period. In fact, Plaintiff testified that he was seeing a doctor on a monthly basis regarding diabetes-related symptoms at the time of the hearing. (AR at 36.) Accordingly, the lack of medical records for this time period does not support a finding that Plaintiff does not suffer from a severe impairment.

---

[3] Prolonged exposure to high blood sugar causes diabetic neuropathy and continued high blood sugar levels can prevent improvement of its symptoms. *See* http://www.mayoclinic.com/health/diabetic-neuropathy/DS01045/DSECTION=causes.

Finally, the ALJ rejected the sit/stand/walk and lift/carry limitations assessed by the state agency reviewing physician in his September 2008 assessment because they were based on not only on Plaintiffs diabetes, but also on his tuberculosis and seizure disorder, which subsequently improved. (AR at 22.) The assessment does not, however, explain which limitations are based on which medical condition. (AR at 334-37.) The fact that this assessment was not based on plaintiff's diabetes in isolation is not substantial evidence that supports a finding plaintiff lacks a medically severe impairment.

Given the minimal threshold required to show that an impairment is severe, the ALJ's stated reasons for concluding that Plaintiff's diabetes is not a severe impairment are not supported by substantial evidence in the record.

**B. The ALJ Improperly Evaluated Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to properly evaluate his credibility in determining that he has no severe impairment. At the hearing, Plaintiff testified that his legs feel numb and weak. As a result, he has difficulty walking and had been using a cane for approximately one year. (AR at 35-36.) He experiences similar sensations in his hands, which prevent him from performing the mechanic work he did in the past. (AR at 43.) He also testified that he experiences extreme fatigue on a daily basis. (AR at 39-40.)

To determine whether a claimant's testimony about subjective pain or symptoms is credible, the ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007). Once the claimant produces such evidence, the ALJ must

provide specific, clear and convincing reasons for discrediting a claimant's complaints, unless there is affirmative evidence showing that the claimant is malingering. *Robbins*, 466 F.3d at 883.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (AR at 21). However, the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent that they are inconsistent with finding that the claimant has no severe impairment or combination of impairments." (AR at 21). Because there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting this testimony.

The ALJ provided several reasons for determining that Plaintiff was not credible. First, the ALJ discredited Plaintiff's symptom testimony based on his daily activities. (AR at 21.) Plaintiff testified he washes dishes and does garden work "a little bit"; feeds the dogs; sometimes makes meals for himself; and can dress himself, though only while sitting down. (AR at 42.) The issue at step two, however, is not whether the Plaintiff is disabled, but whether the medical impairment has "more than a minimal effect on an individual's ability to work." *See* SSR 85-28. Plaintiff's ability to perform these limited activities is not inconsistent with his testimony that his diabetes has at least a minimal effect on his ability to work.

Next, the ALJ discredited Plaintiff's testimony because he discussed his symptoms related to leg numbness only once with his primary care provider and did not mention difficulty with his hands or fatigue. (AR at 21-22.) This explanation improperly discounts the fact that Plaintiff's discussion of his leg numbness with his primary care

provider was sufficient to warrant diagnostic x-rays, and that the x-rays revealed objective evidence of neuropathy in his left foot. (AR at 378-80.) Additionally, Plaintiff testified that he was regularly seeing his doctor at the time of the hearing and had repeatedly discussed his leg problems with him. (AR at 36-37.) Furthermore, the records dated between October 2008 and November 2009 show that Plaintiff was repeatedly seen for diabetes that was out of control and that his blood sugar levels were consistently very high. Fatigue is one of the principal symptoms of uncontrolled diabetes. *See http://www.mayoclinic.com/health/diabetes/ DS01121/DSECTION=symptoms*. Additionally, continued exposure to high blood sugar levels cause the symptoms of diabetic neuropathy to worsen, and can cause the neuropathy to progress from feet and legs to hands and arms. *See http://www.mayoclinic.com/health/diabetic-neuropathy/DS01045/DSECTION=symptoms*. Plaintiff's early complaints in 2008 of numbness in his feet and legs, followed by more recent complaints of numbness in his hands, is consistent with the typical progression of neuropathy. Under these circumstances, the absence of records noting complaints specifically related to Plaintiff's hand numbness and fatigue do not constitute a legitimate reason for finding Plaintiff not credible.

Finally, the ALJ found Plaintiff not credible because he did not comply with his physician's recommendations related to diet and exercise. An ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a course of treatment" in assessing credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the same records stating that Plaintiff was not compliant with diet and exercise recommendations also note that Plaintiff was compliant in taking his prescribed medication and was

coming in regularly for checkups. (AR at 370-406.) Given that Plaintiff has not been wholly noncompliant with his physician's recommendations, this reason does not constitute substantial evidence sufficient to discredit Plaintiff's testimony that he suffered from impairments with at least more than a minimal effect on his abiltiy to work.

In sum, the principal reasons upon which the ALJ based her decision to reject Plaintiff's testimony to the extent they support a finding that his diabetes and diabetic neuropathy were severe impairments is unsupported by substantial evidence in the record.

**IV. Conclusion**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. *See Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Here, the evidence shows that Plaintiff suffers from an impairment or impairments that can be considered "severe" within the meaning of the Social Security Regulations. Whether these impairments prevent Plaintiff from performing either his past work or some work in the national economy is not a determination that this Court can make. Accordingly, the case is remanded for further evaluation in accordance with the five-step sequential process.

DATED: October 3, 2012

_____
Marc L. Goldman
United States Magistrate Judge